THE BOATMAN'S SAVINGS INSTITUTION, Respondent, *v.* THE BANK OF THE STATE OF MISSOURI, Appellant. *

*Banks—Payment—Tender.*—The banks incorporated by the law of this State have the right to consider each bank bill as a separate and distinct demand, and to tender in payment thereof five dollars in the silver coin of the United States, struck under the act of Congress of February 21, 1853, and the balance of each note in gold coin. Such tender avoids the penalty of twenty per cent. interest imposed by the law of this State incorporating the banks. (Acts, 1857, p. 17, § 9, & p. 23, § 44.) Bates, J., dissenting.

*Appeal from St. Louis Circuit Court.*

*Glover*, for appellant.

I. The tender which was made by the Bank of Missouri, in the silver coin of the United States, was good. Gold and silver coin, and gold or silver coin, are the constitutional, and therefore the legal tender for the payment of all manner of debts.

The constitution of the United States, art. 1, § 10, provides that no State " shall coin money," or make anything but gold and silver coin a tender in payment of debts. The evil practices which led to this prohibition in the Federal constitution are enumerated in 3 Story on Cons. 236–8, and are familiar to all who have any acquaintance with our colonial history. It cannot be insisted that any of the abuses enumerated by Story would be less oppressive if enacted by Congress. It was not the source from which they sprung, but the practices themselves which rendered them so odious to the framers of the constitution, and which determined them to raise a barrier against their introduction. The prohibition on the States shows where the power to create these abuses resided had no prohibition been made. The further fact that no grant of power to Congress over this subject is found in the constitution, renders it certain that no such legislation was looked for in that direction. The want of any grant of power to

---

* This and the subsequent case were argued and submitted together. The arguments of the counsel present the points of both cases.

Congress, and the express prohibition on the States to interfere in a named particular, show that the subject of tender was under State jurisdiction.

But if it were so that Congress was not the depository of merely delegated powers, but the fountain of State authority, I insist that the language of the constitution of the United States would be a grant of power to the States to legislate on the whole subject of tender, save in the one particular prohibited. The language "no State shall make anything but gold and silver coin a tender in payment of debts" is substantially this, in effect, that the law of tender is under State jurisdiction, and any State may properly legislate on it; but that, in legislating on it, such State shall not "make anything but gold and silver coin a tender in payment of debts." The case is one in which the exception proves the rule.

II. If we shall determine that Congress has power to legislate on the subject of tender, under what limitations is the doctrine to be received? Are all the provisions of the common law which Missouri has introduced void? and is Congress to furnish us a code on this subject? Is the power concurrent in Congress and the States, or exclusive in Congress? May Congress say at what time of the day, and at what place, and in what form, a tender shall be made? and what shall be the proof of these facts? If Congress can legislate on the law of tender and the States cannot, how shall we define even the meaning of the word tender? There is nothing in the laws of Congress in regard to it. You must go to the common law for the meaning of the word and the manner of the action, and Congress has not adopted the common law.

III. The act of Congress, February 21, 1853, providing that the silver coin issued under it "should be legal tender in payment of debts, for all sums not exceeding five dollars," is unconstitutional in as far as as it limits the right of payment in silver to sums of five dollars and under, (2 Nott & McCord, 519–20,) because, under the constitution, there can be no distinction between gold and silver; both are made media of tender in payment of debts—that is, of all debts without dis-

tinction of dignity or amount. The naming of gold and silver in the constitution generally as media of payment places each on the same footing; neither is disparaged in the constitution, and neither can be disparaged in the law. The constitution makes each unconditionally a medium of payment, and the law cannot attach a condition to either. A right conferred by the constitution generally cannot be made a conditional right by statute. If the right to pay a debt in silver can be limited to the amount of five dollars, the right to pay in gold may be limited to five dollars, or one dollar, or one cent. Silver may be virtually excluded from circulation as a medium of payment, or gold may be so excluded. This is undeniable, provided the statute of February 21, 1853, is valid. Is it at all possible that a proposition to authorize the virtual exclusion of gold or silver from circulation in payment of debts in the discretion of the legislature, could have been incorporated into the constitution? I think not.

IV. But the tender was good under the act of Conress of February 21, 1853. (Brightley's Digest, 153, § 14.) This section provides that "the silver coins issued in conformity to it shall be legal tenders in payment of debts for all sums not exceeding five dollars." Now, when the bank issued and put into circulation her five dollar notes, it was her duty not only to pay her own liabilities, but to receive from others who had to make payments to her the silver coins in cases in which they were payable. Such is the requirement of the act. Silver coins therefore would accumulate in the vaults of the bank. The bank is required to receive all sums of five dollars, and under, in silver, at the will of her debtors. The equity of the statute equally demands that she should be allowed to pay them out for like sums in her pleasure. I admit the statute does not say that the debtor may pay his five dollar notes in silver, but that is certainly the spirit of the act. But the other side contend that the bank may be compelled to receive in silver each five dollar debt she has outstanding; that she can be compelled to pay all her five dollar notes in gold at the pleasure of the holder. This injustice has no

sanction in the statute, or in the nature of the case. It is not only unreasonable that the bank should be compelled to receive on one liability what she cannot pay out on the same liability, but more unreasonable that the nature of her liability should be subject to change in the pleasure of the holder. If A. has two five dollar notes on the bank, and presents each separately, the bank may pay each in silver; but if he sees fit to make them payable in gold, he can do so by calling them ten dollars and demanding gold; that is, the nature of the liability of the bank depends upon the will of the holder of her notes. Such cannot be the true construction. The safer rule is to regard the nature of the liability as fixed by the paper itself, and as always the same. This would be to regard the " sum," which, by the statute, is payable in silver, as the amount mentioned in the face of each note issued by the bank; that is, all five dollar notes are, and each is, a " sum" of five dollars in the meaning of the act, and payable in silver. This would enable the bank to understand its business, which is impossible under any other construction. When she issues five dollar notes she would know how she could pay them; and her silver on hand could be compared with her circulation payable in silver, and she could protect her interests accordingly. (Acts, 1857, p. 22, § 37.) We insist that no other view of the subject is either rational or just. The five dollar notes were separate sums in the meaning of the act of 1853.

1. Each note of five dollars is a separate contract of the bank. 2. Each is issued at a different time, and to a different person. 3. Each may be presented at a different time, and by a different person. 4. The bank may be compelled to pay each at a different time. 5. In law, they are emphatically separate demands, and are so declared on, in this case, in separate counts. 6. The holder has an absolute right to make separate demands of each note in his pleasure, but why so? Why only because they are separate demands, therefore the bank may so pay them.

The case of Suffolk Bank v. Lincoln Bank, (3 Mason, 1,)

is not in point. There, in every event, the whole of the bills, and each one of them, were payable in the same money.

V. The tender was good under the contract by which the notes of the Bank of Missouri were issued. The bank charter (see Constitutional Amendments, Acts, 1857, p. 17) provides that the bank might pay in gold or silver coin. Of course the holder took the notes subject to this right. It was part of the agreement between the Bank of Missouri and the holder of the paper that the bank might pay, and the holder would receive, either gold or silver on all its paper. If it had been part of the contract on which the paper was issued that it might be paid in bacon and corn, the tender of bacon or corn would have been good. The defendant did tender payment according to the bank charter. The defendant did offer specifically to perform the contract in its precise terms.

VI. But the suit now pending is brought to recover a penalty. The penalty is given by a law which annexes it on failure by my client to pay in gold or silver coin. If the defendant was ready to pay in either gold or silver coin, there can be no recovery of this penalty. The plaintiff's suit is a *qui tam* action; as the penalty is given so the plaintiff sues. The State of Missouri had the right to provide on what terms the penalty should be given.

*C. F. Burnes*, for respondent.

I. Each note constitutes a separate contract. The promise to pay is distinct and complete. To enforce this contract the plaintiff has the right to sue on each note separately, and joining more than one note in the same suit must, as in fact it has done in these suits, set out each in a distinct count and pray for judgment on each count, thereby demanding payment of each note separately. Then it must follow that the defendant has the right to treat each note as a separate contract, otherwise the rights of the parties to the contract are not reciprocal. The contract must be construed the same for each party.

II. The tender of payment in silver was full, instantaneous with the demand, and unconditional. The tender was made in exact accordance with the contract of the obligor, to pay the bearer, on demand, five dollars. The law of Congress of February 21, 1853, authorized the payment in silver of demands not exceeding five dollars. That these notes were so many separate demands for five dollars is fully adjudicated by the case of Strong v. Farmers' and Mechanics' Bank, in 4 Mich. 350. This was the sole question presented and decided in that case, and is directly in point here.

This line of argument is not in conflict with the case of The Suffolk Bank v. The Lincoln Bank, in 3 Mason's R. 1, wherein the only question really before the court was not whether there were separate demands, but whether the conduct of the Lincoln Bank, in consuming a whole day in paying $1,000 and refusing to deliver the coin at its own count, did not amount to a refusal to pay. The question of separate or aggregate demands was in no manner before the court and could not be decided.

III. This suit is founded upon the 9th section of article 1 of the banking law of this State, which provides that no bank shall refuse payment, in gold or silver coin, of any of its notes, bills or obligations under the penalty of a fine of twenty per centum per annum, recoverable by the holder of such note, bill or obligation, and a forfeiture of its corporate existence. Now, whatever effect may be given to the act of Congress of February 21, 1853, of which I will speak hereafter, it must appear evident that an offer to pay either in gold or silver coin, or in mixed quantities of both, would be a perfect compliance with this State law. This is so, regardless of the amount of the note or the relative proportions of the coin so tendered.

IV. The entire question of the penalty, the amount, the manner of enforcing it, and the circumstances under which it may be demanded, as well as the means whereby the bank may escape it, are entirely within the discretion of the Legislature. In the exercise of this discretion the Legislature has

prescribed the penalty of twenty per cent. per annum for the refusal to pay, providing, however, at the same time that the bank shall escape this penalty by an offer of payment in gold *or* silver coin; not even restricting it to the gold or silver coin of the United States, but an offer to pay in gold or silver coin of whatever coinage or nationality, whether a legal tender for the debt or not, is made sufficient to release the bank from this penalty.

By the same statute on which this suit is founded, article 1, section 37, the banks of this State are required to keep always on hand an amount of gold *or* silver equal to one-third of their notes in circulation, in default of which the bank commissioner is required to take certain proceedings to force the bank into liquidation. The language here is identical in signification with that of the 9th section on which this suit is instituted. Yet it certainly would not be argued that the bank commissioner could thus proceed against a bank provided it has the required amount of silver coin, even though it might be true that not a single gold coin could be found in its vaults.

In construing this law the whole act is to be taken into consideration, and in reviewing this 37th section we are naturally met by the inquiry as to the reason why the bank is required to keep this amount of gold or silver always on hand. This is required not simply as a guarantee of certain payment, for the specie might be so invested as to be no less safe than the actual coin itself. It is as well to guarantee payment *on demand.* Then can it be that the Legislature would require the bank to be always ready with one or the other of two kinds of coin, and in the same law declare that the one of these coins shall be paid and the other not?

If the Legislature intended to compel the banks to conform to the statute of the United States of 1853, in the relative proportion of gold or silver to be kept or paid out by them, why did it not say so? or, rather, why did it say anything on the subject? Why not stop by saying "No bank shall refuse *payment* of any of its notes, bills or obligations?"

The term payment is clearly defined by law. No payment can be made in anything but the lawful currency of the United States except by consent of parties.

The requirement of the law is to pay in gold or silver coin. The tender is made in both, part in gold and part in silver, the bank claiming the right to pay such of the notes as it pleased in silver coin and such in gold, or all the notes in part silver and part gold, at the pleasure of the obligor. There is no pretence here, as in the case in 3 Mason's Rep., that the bank was slow or hesitating in the manner of offering payment.

It will not be denied that without the act of Congress of 1853 silver is a legal tender in payment of all debts. Then does this act of Congress prohibit a State from making silver a valid medium of payment? On the contrary it expressly recognizes silver as a constitutional currency, and only attempts to limit the amount in which it may be a tender in payment of debts.

The right of the State, under the federal constitution, to make silver a tender in payment of debts to any amount is absolute and undenied; *a fortiori*, a State may exempt an obligor from a penalty for non-payment if he tender payment in this constitutional medium. This right of the State is one of its independent privileges of sovereignty. Congressional legislation cannot restrict or impair it. It is one of the reserved rights not delegated to Congress. The States consented to the restriction that they should make nothing but gold and silver coin a tender in payment of debts, thereby reserving in its full vigor this right to make gold and silver a tender in payment of debts in such manner and to such amounts as they might desire. When the States consented to surrender their right to make anything but gold and silver a tender in payment of debts, can it be argued that they also yielded to Congress the right to say how long they should use gold and silver as a lawful tender, when the one or the other of these coins should cease to be lawful money?

But whether this right on the subject of tender be re-

served by the States or not, certainly they have the authority, which this act of Congress does not attempt to impair, to say that a tender in silver shall be sufficient to relieve the debtor from any extraordinary penalty which the State itself has imposed as a punishment for non-payment.

V. If it were necessary for the argument of the case, I should have no hesitation in presenting the proposition that this law of Congress of 1853 is void, having been enacted without the sanction, and in direct conflict with the spirit of the constitution of the United States.

Congress has the right to coin money, and regulate the value thereof, but they have no power over the subject of tender. It is not competent for Congress to say what is or what is not a tender in payment of debts. This question was alluded to, but expressly avoided, by the court in the case of 18 Illinois, 333; and the same question is directly presented and passed upon in the case of McLarin v. Nesbit, 2 Nott & McCord, 519. It is too well settled to require any argument or authorities at this day to prove that the powers of Congress are such only as are delegated by express words, or necessary implication, in the constitution itself. This construction, after full discussion in the Senate, in the courts and before the people, has become the admitted theory of our Federal Government. It may now be considered the common law of the constitution, sanctioned by the oft-repeated enactment of the Government and the people. If the right to regulate the law of tender is vested in Congress it must be shown by some express provision of the constitution, or by the implication necessary for the proper exercise of some power directly granted. If it cannot be shown to exist in either of these modes, we are irresistibly forced to the conclusion that Congress cannot exercise this power, and that this law of 1853, made without this constitutional sanction, is void. It will not be claimed that this power is vested in Congress by virtue of any of the direct grants in the constitution; and I apprehend that the only provisions from which it will be claimed by inference are the 5th clause of sec. 8 of

art. 1, or from sec. 10 of the same article. The first of these gives Congress power " to coin money, regulate the value thereof, and of foreign coins." The second. provides that " no State shall coin money, nor make anything but gold and silver coin a tender in payment of debts." To enable Congress to coin money and fix its value, is it necessary for it to declare in what quantities that money, or certain kinds of it, may or may not be a tender in payment of debts? Does the power to coin money and regulate its value imply the power to declare in what manner the obligation of contracts may be discharged.

This power to coin is exclusive in Congress. It is expressly denied to the States. The language of the grant to Congress is precisely the same as that placing the restriction upon the States. Whatever power these words give to Congress, the same is denied to the States. The grant to Congress is the same as the restriction upon the States—no greater, no less. If the right to coin money implies the right to regulate the law of tender, the restriction upon the States necessarily prohibits them from legislating on this subject. The words of the grant and the prohibition being the same, this power must be exclusive either in Congress or in the States. If this power be in Congress, it is not exclusive; it is only claimed to be concurrent with the States.

This power in the State Legislatures has been exercised, recognized and admitted in every State in the Union, with the oft-repeated approval of the Supreme Court of the United States. It follows necessarily, therefore, that this power existing in the Legislature of the States, notwithstanding they are expressly prohibited from coining money, cannot be delegated to Congress by virtue of the grant of power to coin money.

But a statute like this of 1853 would be void, whether enacted by Congress or by the State Legislature. Congress having coined this money and fixed its value has exhausted its power over the subject. In fixing its value, the power of Congress is unlimited.

Upon the whole case as made, the notes sued on are separate demands, and being so the offer to pay the notes for five dollars, upon which the first suit is founded, is perfect and complete.    This tender is good both under the banking law of the State and the United States coinage law of 1853.

As to the other suit, founded upon the larger notes, the offer to pay part in gold and part in silver was a literal compliance with the obligation imposed on the bank by the State law, and this compliance relieves the bank from all penalty provided by that law.

Congress has no power over the law of tender.    Having coined the money and fixed its value, it cannot limit the quantity for which it shall be a tender in payment of debts. This act of Congress of 1853 is void as without the sanction of the constitution, and the offer to pay part in gold and part in silver, or if it had been all in silver, was a valid and complete tender in full, and complete discharge of the liability of the defendant.

The judgment of the Circuit Court must be reformed and modified, or at least the voluntary order made by that court must be vacated, so that this judgment may stand like any other simple judgment, bearing the usual rate of interest from the time of its rendition until its satisfaction.

If there was a refusal to pay on the part of the defendant, the penalty incurred by such refusal can only run until the offer of payment was made in court on the 10th day of March, 1860.    The plaintiff might have accepted this principal sum so tendered and continued his suit for the penalty.    The defendant had a right to pay the principal at any time, and an offer to do so must stop the running of the penalty.

*Shepley*, for respondents.

I. The power to coin money necessarily implies the power to say for what purposes and to what extent such coin shall be receivable.    The power is given, not for the purpose of foreign commerce, not for the purpose of paying duties to the United States, but was reserved for the purpose of fur-

nishing the whole people of the United States that which should in every State, apart from State interference, be the same for the purpose of paying debts, for that is the only thing that there is any necessity for any interference about. The people can now conventionally agree to make anything a currency for the purchase and sale of commodities, as Brandon or Cairo money. But, whether or not the power of coinage does of itself, of necessity, carry into it the right to say how and to what extent the coin shall be taken in payment of debt, yet the power to regulate the value of such coin and of foreign coins, contained in the same clause, clearly gives the power.

II. If the power to coin money is nothing but to make coin of a certain prescribed form, and to fix the denomination of it, then, after that is done, we have in the country two classes of coin—that of our own, and that of foreign origin. Over both these the power of Congress is the same, " to fix the value thereof." Now, suppose that Congress had said that the silver coins of Denmark shall be received at the rate of one dollar the ounce for all sums up to five dollars, and shall be a legal tender up to that amount; I do not suppose that any person would contend that any debt over five dollars could be paid in silver of Denmark. The reason is, that Congress has fixed its value *sub modo*, when it is to pay a particular amount; then it is to be considered in such quantities equivalent to that amount, but no further. It would seem that the only question here was whether, as Congress declined to make its value general, it was good in payment of debts to any amount. So, in this case, the question would really seem to be, not whether a man could pay his debts in debased coin, but whether Congress, in making such debased coin and limiting its value to transactions of a certain amount, had not exceeded its powers, so that such coin thus limited and restricted, and not of any fixed value, over a certain amount, in transactions with the Government, or between individuals, was such as a creditor was compelled to take. .

But there is another consideration that is conclusive.

According to the proposition contended for by the defendant Congress has, by the constitution, the power alone to coin money and to fix the value of those and of foreign coins, and by that same constitution—as no power is anywhere expressly given in so many words to say what shall be a legal tender, and no prohibition upon the States against declaring what shall be a legal tender, other than it shall not be anything else than gold and silver coin—the States have the power to say what gold and silver coins shall be legal tender within their own territory. If this be so, then, as soon as Congress has acted upon the subject, it would be entirely competent for any State to make a discrimination and say what coins of the United States shall alone be a legal tender within its limits; nor are its powers limited to that, for it is just as competent for the State to say that foreign coins shall alone be a legal tender, thus making our own coinage of gold and silver a prohibited thing within its territory, as far as its government and laws are concerned. But it is just as competent to do more than this. If this construction be true, a State can pass, within the limits of the constitution, a law giving to its people an advantage in its trade with a foreign State, for it has only to enact a law that the coins of England or France, or some other country, to the coins of which Congress has fixed a value by weight or tale, and with which we have much intercourse, shall alone be a legal tender, and the matter is accomplished. Suppose Maine, which has a large trade with Canada, to pass a law that English gold and silver coins shall alone be a legal tender. According to the views maintained by the plaintiff she would have a perfect right to do it, and yet it is perfectly plain that no law could be passed more subversive of the whole spirit of the constitution than this.

II. As to defendant's second proposition, that in any event they have the right to pay all the five dollar notes in silver, though demanded as one debt, we say—

1. The object of the law was to keep in the country silver sufficient for change; sufficient to pay small debts. That was

the object of debasing the silver currency. It never entered into the contemplation of Congress that the word used—" sum"—could be wrested from its obvious meaning so as to authorize any bank to pay all its notes in this debased currency alone. Four-fifths of the whole circulation of New England is in five dollar notes and under.

2. The amount which the creditor holds and presents at one time, as the owner, whether it is made up of one cause of action or fifty, is yet one demand—one sum. The creditor has a debt against the bank; the notes he has in his hands are but the evidences of it. According to the defendant's theory, if I deposit for four days successively five dollars each day, I could, (if the law of Congress be constitutional,) at the end, demand twenty dollars in gold; but, instead of having it entered upon a bank book, I had taken each day a certificate of deposit, I could not, by presenting, at the end of the four days, on my four certificates, demand the gold, but must be content to receive silver. If, at the end of the four days, I, upon my open deposit, instead of asking for gold had taken the notes of five dollars, each, of the bank, then, according to the argument, the relation of the bank towards me had entirely changed; and if, the next moment, I wished to get the bank to redeem what it had paid me, I must be content with silver. (Suffolk Bank v. Lincoln Bank, 3 Mason, 1; Hubbard v. Chenango Bank, 8 Cow. 88; Gilbert v. Nantucket Bank, 2 Am. Law Jour. 110.)

3. Nor is the question at all affected by the manner in which we may be obliged to declare upon these notes as separate causes of action, for

a. This is a matter solely of practice, regulated by the particular State. It was attempted, last session, in order to avoid the harassment occasioned by being obliged to set out each note, to allow all the notes held by the debtor against any bank to be included in one count; but no one will contend that the passage of such a law could change the meaning of the act of Congress. It is perfectly competent for the State to say that you must declare upon each item of an open

deposit account in separate counts; but no one supposes, if this was done, that it would have any effect as to whether the debtor had a right to demand gold or silver for his deposit account, for

*b.* This is a matter that depends entirely upon the intent and meaning of the act of Congress. If, in speaking of tender, it refers to a debt however evidenced, then it is of no manner of importance how that debt is to be declared upon.

III. As to the third proposition that, though not good enough for a tender under the acts of Congress, yet it is good enough under the acts of the State of Missouri, we say—

1. Every act is to be construed with reference to the existing state of law at the time. The act of 1853 had been long upon the statute book; was well known to the Legislature; its constitutionality had never been questioned.

2. The section (9th) is not conferring upon the corporation created a privilege, but it is jealously guarding the rights of its citizens.

3. It is not to be presumed that the Legislature, in dealing with and protecting the interest of the people of the State against the corporation thus created, should make the creditor of the bank receive less than the paramount law said he had a right to demand.

4. The evident intent of the section, where it speaks of "gold or silver" to refer to the paramount law regulating in what they and all other persons were to pay their debts, gold when the law required gold, and silver when the law admitted of payment in silver. It means that no bank shall refuse to pay in gold when, by the law of the land, gold was demandable; nor shall refuse to pay in silver, when, by the law of the land, they were permitted to pay in silver.

5. Such a construction cannot be given to the law without disregarding the obvious intent of the constitutional amendment and the act carrying it into effect. This construction as to the twenty per cent. interest applies as well to depositors as to bill holders, and also to the suspension of specie pay-

ment, and to the final winding up of the corporation. The bank act is in no sense a penal statute.

6. There is no more pretence of calling this interest at twenty per cent. a penalty than there is in calling the twenty per cent. damages arising from the nonpayment of a foreign bill of exchange a penalty. It is simply a provision that the rate of interest fixed by law generally, shall, as to the corporation, in certain events, be increased, and the contract bear a higher rate of interest. (Hubbard v. Chenango Bank, 8 Cow. 88.) There is no pretence that this interest was given as a punishment, but only as a fixed and stated indemnification, as twenty per cent. damages are given on a foreign bill of exchange.

IV. The only other matter yet remaining to be considered is as to the form of the judgment. We say—

1. That the judgment should carry, under the laws of this State, the same interest until paid that the debt is bearing. By the law of this State, that debt was, from the time of demand, bearing interest at the rate of twenty per cent. per annum. The debts were contracts of the defendant. By the general law, they would bear interest at six per cent. after due ; by the particular law, after due they bore twenty per cent. interest.

2. That the tender as made, or admitted at the time of trial, does not change the state of the case, for, first, the defendant in his answer alleged a tender, and proved it as alleged. If that was no tender, then it cannot be supposed that the defendant meant to set up a different tender in one part of his answer from another ; that, in one and the same breath, he says that silver is a good legal tender, and in another, where he speaks of the same things, he means to be understood as referring only to gold. Besides this, there is no agreement as to any other tender than as originally made, but only an agreement that it may be considered to be a continued tender as originally made. Second : But if made as now insisted upon, it is not good, for it must have been for the amount and interest at twenty per cent. from the time

of demand, of which there is no pretence. (Hubbard v. Che-
nango Bank, 8 Cow. 88.)  A tender to be good, must be a
continuous thing.  The money must be always ready, and if
suit is brought must, in order to be effectual, be brought into
court; and it was to avoid the necessity of bringing the mo-
ney into court, as previously tendered, that the agreement
was made.

V. The judgment was entered up correctly as to the inter-
est it is to bear, for

1. The third section of the act regulating interest states
that all such judgments and orders for money upon contracts
bearing more than six per cent. shall bear the same interest
borne by said contracts.  (1 R. C. 890.)

2. The bank act, by its terms, says that the holder of the
bills presented "shall be entitled to receive interest from the
time of such demand and refusal at the rate of twenty per
cent. per annum until paid.  Now, the defendant could re-
lieve itself from the consequences of paying twenty per cent.
by not coming to this court, but chose to let this case come
here, and can complain of no hardship.  The law is clear as
to the words of the statute, that the person damnified by the
refusal of the bank is to receive the interest named in the
statute until the amount is paid.

*Lackland, Cline & Jamison,* for respondents.

By an act of the Legislature of this State, entitled "An
Act to regulate Banks and Banking Institutions, and to cre-
ate the offices of Bank Commissioners," approved 17th No-
vember, 1857, § 9, it is provided that "No bank or branch
bank shall, at any time, suspend or refuse the payment, in
gold or silver coin, of any of its notes, bills or obligations,
nor of any money received upon deposit, demanded by the
holder or depositor, at the place where the same is made pay-
able; and in case of such refusal, the holder of such note,
bill or obligation, or the person entitled to receive such mo-
ney, shall respectively be entitled to receive interest from the
time of such demand and refusal at the rate of twenty per

centum per annum until paid"; and the same section further provides " that should any bank or branch bank at any time suspend specie payment, as aforesaid, for the period of ten days, the charter shall cease."

This section requires the bank to redeem its notes " in gold or silver coin," or, in case of a failure to do so, to pay interest on the sum demanded from the time of the demand, at the rate of twenty per cent. per annum until paid. It is contended that the words gold or silver coin, as used in this connection, mean simply that the bank shall pay their liabilities of the character described in the ninth section, in that which is legal tender under the acts of Congress on that subject. The act of Congress of 21st February, 1853, provides for the weight and coinage of half and quarter dollars, and dimes and half dimes. They are the only silver coins provided for by the act.

The 14th section of this act states: " The silver coins issued in conformity with the above section shall be legal tenders in payment of debts for all sums not exceeding five dollars. (Brightley's Dig., p. 152, § 14; 10 Stat. at L. 160, § 2.)

Congress, by statute, adulterated the silver coins between six and seven per cent., and then provided they should not be legal tenders for any debt exceeding five dollars.

The words " gold and silver" mean legal tender under the act of Congress. (Webb v. Moore, 4 Mon. 483; Bryant v. Damariscotta Bank, 18 Maine, 240.)

Banks are liable if they fail to use due diligence to redeem their notes. (Wendell v. President, Directors & Co. of the Washington and Warren Bank, 5 Cow. 161; Hubbard v. Chenango Bank, 8 Cow. 88; Gilbert & Dean v. Nantucket Bank, 2 Am. Law Jour. 107; Braun v. Penobscot Bank, 8 Mass. 445; Suffolk Bank v. Lincoln Bank, 3 Mason, 1; Bank of Ky. v. Thomsberry, 3 B. Mon. 519.)

A note calling for payment in Arkansas money means United States coin. (Wilber v. Greer, 6 Ark. 255.) So is a note calling for good current money of this State. (Graham v. Adams, 5 Ark. 261.) So is a note payable in Ten-

nessee money.  (Searcy v. Vance, Mart. & Yerg. 225.)  A State cannot make anything but gold and silver coins a legal tender.   (Lowry v. McGhee & McD., 8 Yerg. 242.)

Gold and silver mean current coin of the United States. (Hart v. Flynn, 8 Dana, 190.)   In this case, the note was made payable in gold and silver.   A tender was made in old silver teapots, cups and finger rings, &c.   *Held,* insufficient. In the case of People v. Dubois, 18 Ill. 333, the party presented two five dollar bills to the bank for redemption, which the officer of the bank offered to redeem in quarter dollars issued under act of February, 1853.   The holder of the bills refused to take the quarters, and applied to the auditor to proceed against the bank as for a suspension.   He refused ; and this was a proceeding to compel him by mandamus.  The court decided that it did not appear from the proceedings but that the quarters were issued prior to the act of 1853 ; and if so they were legal tender to any amount.   It was not decided whether quarters issued under the act of 1853 would have been a good tender or not, although we think the reasoning of the court is decidedly in that direction.

In the Suffolk Bank v. Lincoln Bank, 3 Mason, 1, Judge Story decides that where a number of bank bills are presented for redemption, by one person, at the same time, they constitute one consolidated debt or demand.

A tender of one aggregate sum in payment of several debts is a good tender.   (Thetford v. Hubbard, 22 Vt. 449.)  The converse of this proposition must be that a demand of payment of a sum composed of several sums is a good demand.

The only case we have met with which does not seem to favor our view of this point, is that of Strong v. Farmers' and Mechanics' Bank of Michigan, 4 Mich. 350.   The Supreme Court of Michigan does not discuss the case at all. There is an entire want of reason or authority for the conclusion to which a majority arrived.   It will be observed that only three judges concur, while two dissent.   A bare majority agree to the opinion.   The plaintiff made demand of payment of the notes, and defendant failed to pay them.   The

plaintiff thereby became entitled to recover the amount of the face of the notes, with twenty per cent. interest thereon, from the date of the demand until paid; and this is a vested right, and cannot be affected by any legislation in this State upon that subject. (Commercial Bank of Natchez v. Chambers, 8 S. & M. 957; City of St. Louis v. Russell, 9 Mo. 507; Chesnut v. Shone, 16 Ohio, 599; Houston v. Boyle, 10 Ire. 496; Wright v. Marsh, 2 Greene, Iowa, 94; Thorn v. San Francisco, 4 Cal. 127; Berlin v. New Britain, 9 Conn. 175; Robinson v. Magee, 9 Cal. 81.)

The pleadings show no tender; and the offer to bring the money into court is insufficient, because it is conditional. The amount of the tender only covers the face, or aggregate, of the notes mentioned in each petition. The defendant only offered the aggregate amount of the notes, without any interest or damage, upon the condition that the said sum should be in entire satisfaction of the debt sued for.

The demand for payment was made June, 1859, and the interest commenced at that date. The answer was filed, setting up the tender or offer to pay, June, 1860, nearly a year afterwards, and no interest or damages is offered. This is not good either as a tender or offer to pay. (5 Pick. 106.)

The answer is no proof. The agreement is the only evidence that shows the only kind of offer that was made, that is, to pay in the adulterated silver coin made under the act of 21st February, 1853. If a tender is made after suit is brought, the costs must be tendered. (Thurston v. Blaisdell, 8 N. H. 367; Hampshire Manuf. Bank v. Billings, 17 Pick. 87; Retan v. Drew, 19 Wend. 304; Burt v. Dodge, 13 Ohio, 131.)

A tender is not good if it be accompanied with a demand of a discharge of the party by whom, or for whom, the money is tendered. (Richardson v. Boston Chemical Laboratory, 9 Met. 42.)

A tender of money in payment of a debt must be without qualification, and a tender of a sum of money in full discharge of all demands of the creditor is not good. (Wood v. Hitch-

cock, 20 Wend. 47; Brooklyn Bank v. DeGraw, 23 Wend. 342; see this subject treated generally in 2 Greenl. Ev., § 600–605.)

DRYDEN, Judge, delivered the opinion of the court.

This was a suit brought by the respondent against the appellant to recover the amount of a large number of bank notes issued by the appellant for circulation, together with the interest thereon, at the rate of twenty per cent. per annum, from the 4th day of June, 1859. The notes sued on were of the denominations of tens, twenties and fifties, and amounted in the aggregate to $53,650. The petition contained a count on each note in which a demand and refusal of payment of each at the place where payable were averred, and judgment was asked for the amount of the note, with damages at the rate of twenty per cent. The appellant answered, averring a tender and offer to pay, and the refusal of the respondent to accept payment at the time and place of the demand. The case was tried upon the following agreed statement of the facts, to-wit:

" The plaintiff, on the 4th day of June, 1859, presented at the defendant's branch bank at Palmyra, in this State, all the bank notes described in the plaintiff's amended petition together, and at one and the same time, and demanded payment thereof from the proper bank officers, and thereupon the defendant offered to pay five dollars on each and every of the notes in the silver coin of the United States, issued after the first day of June, 1853, in conformity with the act of Congress of the 21st February, 1853, and the residue of each and every note in the gold coin of the United States, which the plaintiff declined to receive, and the notes still remain unpaid.

" The production in court of the money tendered in the defendant's answer is waived by the plaintiff, and, so far as the question of tender in the answer is concerned, the case shall be tried and determined as though the sum tendered by the answer had been deposited in court when the answer was

filed and had remained in the custody of the court during the litigation and until the final determination of the case."

The Circuit Court rendered judgment for the plaintiff for the amount of the notes and interest, computed at the rate of twenty per cent. per annum from and after the 4th of June, 1859, and the defendant appealed to this court. In case of the reversal of the judgment, we are asked to give such judgment as the court below ought to have given.

The main question in this case is whether, under the facts agreed, the offer of the defendant to pay five dollars in silver and the remainder in gold on each note was a tender in compliance with the act of Congress of 21st February, 1853, relating to the coinage of silver.

The first section of the act provides for a reduction of the weight of the silver coins to be issued after the 1st of June, 1853, and the second section then enacts " that the silver coins issued in conformity with the above section shall be legal tenders in payment of debts for all sums not exceeding five dollars. (10 U. S. Stats. at L. 160.)

In order to overthrow the tender set up by the defendant, by showing that too large a proportion of silver coin was offered, the plaintiff assumes the ground that the whole of the notes held and presented by it at one and the same time constituted but one single debt, and not many debts, as insisted by the defendant, and upon the soundness of this position the main question depends.

Mr. Justice Blackstone, (3 Bl. Com. 154,) says : " The legal acceptation of *debt* is a sum of money due by certain and express agreement, as by a bond for a determinate sum ; a bill or note," &c. According to this definition of the term, when the various notes in this case were first put out into as many hands, it may be, as there were notes, the debts of the bank were as numerous as were its notes. Did the concentration of the notes in the hands of the plaintiff effect the consolidation of the debts ? If the debts became thus consolidated—if the many debts became one—then the plaintiff, in demanding payment, was obliged to demand the whole at

one and the same time, and could not demand parts of the whole at different times; for neither is the creditor bound to receive nor the debtor to pay his debt in parcels. Now, can it be denied that the plaintiff could lawfully have demanded payment of one of the notes it held, one day, reserving the rest for another day? And in such case, would the bank have been justified and exonerated from the penalty of twenty per cent. imposed by its charter, in refusing payment, on the ground that the demand was for a part only of a larger debt? Would such a defence be tolerated for one moment? and yet if each note is not a several debt, the defence is good.

When the plaintiff came to sue, it was obliged, upon this doctrine of consolidation, to declare for the entire debt in one and the same count. It would not have been competent to have parcelled out the entirety and counted separately on the several parts. Yet, in looking into the petition, it is seen that, in the face of the plaintiff's own theory, there are as many counts as notes, each count being based on a distinct note.

The statute of limitations commenced running against the plaintiff's right of action from the time of the refusal of the defendant to pay, supposing there was a refusal. Now, suppose that, within the time limited for bringing suit, a partial payment had been made by the defendant, and endorsed by the plaintiff, on one of the dishonored notes; would such partial payment relieve the remaining notes from the operation of the statute? It would upon the idea there was but one debt; otherwise it would not.

Suppose, when the notes in this case, amounting to $53,650, were presented for payment, the bank had had but $53,000 in coin in its vaults, and had then produced this coin, and, in terms, offered it to the plaintiff in payment of all except thirteen of the notes of fifty dollars each, can it be said this would not have been a good tender as to all except the thirteen notes? If good, it is only because the several notes were distinct and independent debts, and not the whole one single debt. To deny the validity of the supposed tender is to deny

the well settled law that a debtor has the right, not only to prefer one creditor over another, but also to provide for one debt to the exclusion of another owing to the same creditor.

In practice, banking institutions, for the sake of convenience and the dispatch of business, ordinarily pay their notes as a unit when presented collectively; but the question is not whether they may, but whether they are bound, thus to pay on such presentment.

A case in 4th Mich. R. 350, is the only authority to which we have been referred bearing upon the question whether the notes, as presented, constituted one or many debts. This was a case in which payment of thirty bank notes, of five dollars each, payable to bearer on demand, had been demanded at one and the same time, at the counter of the bank, and a tender and offer of payment of the notes had then and there been made wholly in silver half dollars of the coinage under the act of February, 1853. The arguments of the counsel in the case were directed exclusively to the question whether there was one debt or more, and the court, without giving the reasons upon which its opinion was based, decided briefly that the tender was sufficient. The court, in coming to the conclusion at which it arrived, necessarily assumed that each one of the thirty notes was a several debt.

It is the privilege of the debtor to pay his debts separately in such media of payment as the law makes applicable—a privilege with an eye to the advantages of which he is supposed to enter into his contracts, and of which he cannot be deprived at the mere option of the creditor. If the law were otherwise, banks would be forced to exclude altogether from their vaults the silver coins of the country, to the great detriment of commerce and the inconvenience of the people, or be constantly exposed to the danger of being run upon by speculators in gold, and of consequent suspension of payment; and corresponding to this privilege of the debtor is the right of the creditor to demand separate payment of his several debts.

We are therefore of opinion, as well upon principle as upon authority, that each of the several notes, at the time of their presentment by the plaintiff for payment, was a single and distinct debt within the meaning of the act of Congress ; and further, that the offer of payment of said notes made by the defendant, at her branch at Palmyra, at manner and form as agreed, was a valid and sufficient tender, in conformity to the provisions of said act of Congress.

Another question of great moment was ably discussed by the eminent counsel in the case ; that is, whether the provision in the second section of the act of Congress, which assumes to limit the tender of the coinage under the first section to sums of five dollars and under, is not unconstitutional; but we refrain from expressing any opinion on the question, since the view we have taken of the first point disposes of the case.

The judgment of the Circuit Court will be reversed, and a judgment will be entered in this court in behalf of the plaintiff for $53,650, the aggregate amount of the notes sued on, which may be discharged by the payment of that sum by the defendant in the kinds of coin, and in the proportions tendered by the defendant at her branch at Palmyra on the 4th of June, 1859.    The defendant will recover costs in both courts.

Judge Bay concurs.

BATES, J.    I do not think that the reasoning of the opinion of the court properly applies to bank notes issued for circulation as currency.    I think that they are to be regarded as money, and that the holder of any number of them may, at his pleasure, present them for payment singly or as one aggregate sum.    A handful of bank notes may properly be regarded as one sum, just as a bag of coins would be.    I dissent.